IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES G. AKERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-00901 |
| | ) | Judge Sharp / Knowles |
| SPECIALIZED LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

Pending before the Court are Defendant's Motion to Dismiss and Motion to Renew its Motion to Dismiss. Docket Nos. 27, 34. Defendant has filed a supporting Memorandum of Law. Docket No. 28. As grounds for its Motion to Dismiss, Defendant argues that: (1) Plaintiff lacks standing under Tennessee law to bring claims against Defendant; (2) Plaintiff fails to state a claim for relief under the Federal Home Affordable Mortgage Program because Congress did not intend to confer a private right of action to individuals arising from the Program; and (3) Plaintiff can prove no set of facts entitling him to relief for breach of contract because he admits that, on multiple occasions, he and his wife failed to make timely monthly mortgage payments. Docket No. 27.

Plaintiff has filed a Response, arguing that he has standing because he personally: (1) negotiated and implemented the Mortgage Loan Modification ["HAMP"] Agreement; (2) signed the HAMP Agreement as a "Borrower"; (3) made timely "trial period" payments; (4) maintained the HAMP Agreement with Saxon Mortgage Services, Inc., current and in "good

standing" at all times until the account was reassigned to Defendant on January 20, 2012; (5) made a "good faith" payment of $2755.31 on June 14, 2012, and another of $777.08 on June 23, 2012, neither of which was applied to his account; and (6) is the rightful owner of one-half of all equity retained in the property which SLS "is attempting to place at dire risk in this overall matter." Docket No. 30. Plaintiff states that he has not asserted a claim under the Federal Home Affordable Mortgage Program. *Id.* Plaintiff contends that Tenn. Code Ann. 47-50-112 "together with" Fed. R. Civ. P. 65 allows this Court to "unquestionably maintain[] both subject matter jurisdiction and personal jurisdiction over all parties." *Id.* With regard to his breach of contract claim, Plaintiff argues that he can prove that it was Defendant who first and repeatedly breached the contract, and that Defendant closed Plaintiff's account in September 2012, thereby leaving Plaintiff no way to make any further payments. *Id.*

This is a foreclosure and loan-modification action. Docket No. 1. Plaintiff sues Specialized Loan Servicing, LLC ("SLS"), seeking an order restraining Defendant, "together with and including all of its officers, agents, servants, employees, and attorneys, restraining them from all further acts of fraud, coercion, intimidation, extortion, and threats of every nature against [Plaintiff] and/or his wife"; and an order enforcing upon Defendant, "together with all of its officers, agents, servants, employees, and attorneys, respectively, all provisions of the certain 'HOME AFFORDABLE MODIFICATION AGREEMENT' entered into by [Plaintiff] and his wife, Deborah L. Akers, *jointly*, on April 16, 2011, with Morgan Stanley Mortgage Capital Holdings, LLC, by and through its then attorney-in-fact and 'servicing agent', Saxon Mortgage Services, Incorporated." *Id.* (Emphasis aded.)

For the reasons set forth below, Plaintiff has failed to state a claim upon which relief can

2

be granted. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss and Motion to Renew Motion to Dismiss be GRANTED.

## II. Analysis

### A. Standard of Review:  Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action,

3

supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

**B.  The Case at Bar**

As discussed above, Plaintiff did not file a "Complaint" in this action. His initial filing was a document headed "Petition for a Restraining Order; & for Order to Enforce Contract Provisions."  Docket No. 1.  In his Petition, Plaintiff sets forth two "claims for relief": (1) "Petition for a Restraining Order"; and (2) "Petition for an Order Enforcing Contract Provisions."  In his first claim for relief, Plaintiff states in part as follows:

> 45. Akers hereby acknowledges that he cannot state with certainty whether those acts of/by SLS as specifically shown within hereinabove . . . were the product of: (i) incompetence and/or negligence on the part of SLS; **or** (ii) blatant attempts to defraud, blackmail, and/or extort money from the Akers'.
>
> 46. Akers does assert, however, that, if those acts by and/or on behalf of SLS and as specifically shown within here above . . . have been the product of incompetence and/or negligence on the part of SLS, then the Akers' are entitled to a restraining order pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure prohibiting any/all further such acts and **specifically including** further unjustifiable "Notice(s) of default and notice(s) of intent to foreclose" by and/or on behalf of Specialized Loan Servicing, LLC, together with all officers, agents, servants, employees, and attorneys thereof **as well as** all other persons in active concert or

4

> participation within anyone described in Rule 65(d)(2)(A) or (B).

Docket No. 1, p. 10 (boldface and underlining in original).

In his second claim for relief, Plaintiff states in part:

> 49. Based on various communications received from SLS as in, *e.g.*, "Petitioner's Exhibit P-35" & "Petitioner's Exhibit P-36" (collectively), "Petitioner's Exhibit P-37" at Page 1, ¶ 2, Lines 2-4 & Page 2, ¶ 2, Lines 4-6, **in addition to** the communications enumerated within ¶¶ 20-22, 25, 26, 28-31, 34, & 36 through 38 hereinabove, Akers asserts that SLS is attempting to coerce: (i) foreclosure on the Akers' real property; or (ii) an untenable refinance of the subject contract.
>
> 50. The "HOME AFFORDABLE MODIFICATION AGREEMENT entered into by Akers and Deborah L. Akers, jointly, on April 16, 2011, with Morgan Stanley Mortgage Capital Holdings, LLC, by and through its then attorney-in-fact and "servicing agent," Saxon Mortgage Services, Inc., clearly: (i) remains valid and enforceable pursuant to Tennessee Code Annotated § 47-50-112; & (ii) demonstrates that Specialized Loan Servicing, LLC has no legal authority to force either of the results enumerated within ¶¶ 49(i) & (ii) hereinabove.

Docket No. 1, p. 11 (boldface and underlining in original).

Plaintiff's "Petition" is basically a chronology of payments he and/or his wife made to Defendant's predecessor loan servicer, Saxon Mortgage Services, Inc., and to Defendant. The Complaint also discusses statements and notices Defendant sent to Plaintiff and/or Plaintiff's wife. In fact, Plaintiff has attached 37 Exhibits to his Petition.[1]

It is important to note that the only Plaintiff in the instant action is James G. Akers.

Plaintiff's claims are based entirely upon a "Home Affordable Modification ["HAMP"]

---

[1] The Court can properly consider documents attached to the Complaint in connection with the instant Motion to Dismiss. Fed. R. Civ. P. 10(c); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335 (6th Cir. 2007).

Agreement" that was executed by Deborah L. Akers as "Borrower," and Morgan Stanley Mortgage Capital Holdings, LLC, as lender or servicer. The HAMP Agreement is attached to Plaintiff's Complaint as Docket No. 1-2. The Agreement was signed by Deborah L. Akers as "Borrower," and a Notary Public executed the "Borrower Acknowledgment" regarding Deborah L. Akers on April 16, 2011. It was executed by an official of Morgan Stanley Mortgage Capital Holdings, LLC on April 26, 2011. Plaintiff avers that he also signed the HAMP Agreement as a "Borrower." Docket No. 1-2, p. 8. There is, however, no "Borrower Acknowledgment" for Plaintiff.

The HAMP Agreement states in relevant part:

> If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."
> . . .
>
> 1. My Representations and Covenants. I certify, represent to Lender, Covenant and agree:
>
>> A. I am experiencing a financial hardship and as a result, (i) I am in default under the Loan Documents or my default is imminent, and(ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future. . . . .
>> . . .
>
> 3. The Modification. If my representation and covenants in Section 1 continue to be true in all material respects and all preconditions to the modifications set forth in Section 2 have been met, the Loan Documents will automatically become modified on May 1, 2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that

6

> if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on May 1, 2011.
>
> . . .
>
> [4]F. [I agree] That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction and release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

Docket No. 1-2, p. 2-3, 5.

While there is no original mortgage document in the record, there are two notes executed February 20, 2003, regarding the property at issue (543 Richmar Drive, Nashville, Tennessee 37211). Both those Notes are signed only by Deborah L. Akers; neither of the Notes references Plaintiff James Akers.

Defendant first argues that Plaintiff James Akers lacks standing to bring the instant action. The Court agrees.

As discussed above, the Agreement that Plaintiff seeks to "enforce," is a "Modification Agreement." The Agreement modifies prior "Loan Documents" (the original 2003 Notes and Mortgage Documents). Plaintiff James Akers is clearly not a party to the 2003 Notes. Docket No. 28-1. Additionally, Plaintiff never avers that he is a party to the 2003 mortgage documents.[2] Because Plaintiff is not a party to the prior Loan Documents, the modification of those

---

[2] The burden is upon Plaintiff to show that he has standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992).

documents simply does not involve Plaintiff.

It is also clear that Plaintiff James Akers is not a party to the Home Affordable Modification Agreement, even though it bears his signature.[3] His name appears only once in the Agreement, where he has signed a blank line with the word "Borrower" at the end of that line. The Agreement, however, places no obligations upon Mr. Akers. As discussed above, in other parts of the Agreement, the only Borrower referenced is Deborah L. Akers. Moreover, the only "Borrower Acknowledgment" is for Deborah L. Akers.

Defendant next argues that, even if Plaintiff could show standing, he has no cause of action under HAMP. *See Hart v. Countrywide Home Loans, Inc.,* 735 F. Supp. 2d 741 (E.D. Mich. 2010). One Court has described the HAMP program as follows:

> In response to a growing number of home foreclosures in the United States, the U.S. Department of the Treasury (the "Treasury") in February 2009 created the Home Affordable Modification Program ("HAMP"). HAMP aims to prevent avoidable home foreclosures by encouraging loan servicers to reduce the required monthly mortgage payments for struggling homeowners. Specifically, HAMP enables certain homeowners who are in default or at imminent risk of default to obtain "permanent" loan modifications, by which their monthly mortgage payments are reduced to not more than thirty-one percent of their monthly income for a period of at least five years. Loan servicers receive from the government a $1,000 incentive payment for each permanent HAMP modification they offer.

*Bourdelais v. J.P. Morgan Chase Bank, N.A.,* 2011 WL 1306311 (E. D. Va.) at *1.

The *Bourdelais* Court stated:

> HAMP modifications essentially proceeded in two steps. First, the

---

[3] The Court accepts as true Plaintiff's allegation that the illegible signature on page 8 of the HAMP Agreement is his. See Docket No. 1-2, p. 8. The claim that Plaintiff is a party to the Agreement, however, is a legal conclusion, which the Court does not have to accept as true. *Ashcroft v. Iqbal,* 566 U.S. 662, 679 (2009).

loan servicer compares the net present value ("NPV") of a
borrower's existing loan with the NPV of a hypothetical HAMP-
modified loan to determine whether it would be more profitable to
modify the borrower's loan or permit to proceed to foreclosure. If
modification appears to be desirable, the servicer offers the
borrower a three-month Trial Period Plan ("TPP"), the terms of
which are memorialized in a TPP Agreement. If all the conditions
of the TPP Agreement are satisfied, the borrower then proceeds to
Step-two, at which he or she is offered a permanent loan
modification.

In *Bourdelais*, Plaintiff alleged that Defendant breached her TPP Agreement by failing to offer her a permanent loan modification. The *Bourdelais* Court notes that other plaintiffs had asserted a variety of claims arguing their entitlement to a permanent HAMP modification, but "none of [these] have faired well in the courts." *Id*. at *3. The *Bourdelais* Court noted, "Courts universally rejected these claims on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers." *Id*.

Other homeowners pursued breach of contract claims based on their TPP Agreements. In *Bourdelais*, Plaintiff contended that she had a "straightforward breach of contract claim," and that the body of law holding that HAMP does not create a private right of action is wholly irrelevant to the breach of contract issue.

The *Bourdelais* Court rejected this argument stating in part:

> Several courts have flatly rejected this contention. In *Vida v. One West Bank,* F.S.B., the homeowner-plaintiff contended that her breach of contract claim was based on her TPP agreement and common-law contract principals, independent of HAMP. No. 10-987-AC, 2010 WL 5148473, at *4 (D.Or. Dec. 13, 2010). The court dismissed her claim holding that she "fail[ed] to state a cause of action independent of HAMP," because "the alleged offer to modify came about and was made wholly under the rubric of HAMP, as were [her] alleged actions and acceptance of the offer."
> 
> . . .

9

> Plaintiff here does not allege a breach of contract claim wholly independent of HAMP. To the contrary, Plaintiff's own complaint illustrates that HAMP and its guidelines are indispensable to her breach of contract claim. . . . Plaintiff cannot rely on HAMP to define the scope of her modification rights while at the same time professing that her action persists without "any reference to HAMP."

*Id*. at *4.

In the case at bar, the Borrower's claim is not wholly independent of HAMP. The case comes about under the rubric of HAMP, and, therefore, HAMP and its guidelines are indispensable to the breach of contract claim. Plaintiff seeks to have the Court enforce the HAMP Agreement, which would not be possible if not for the existence of HAMP.

Moreover, Plaintiff has conceded that he is not attempting to raise a claim under HAMP. Docket No. 30, p. 3. Plaintiff has stated, "Akers has not asserted a '. . . a claim under the Federal Home Affordable Mortgage Program'." *Id*.

Additionally, it is not entirely clear that Plaintiff is attempting to assert a claim for breach of contract. In his Petition, he never specifically raises a claim for breach of contract. Instead, he seeks an Order enforcing the contract provisions. Docket No. 1, p. 11. While he has cited a number of "facts" and dates, he never specifically avers exactly what Defendant did or did not do in that constitute a breach of the contract. It may be that Plaintiff is alleging that Defendant breached the terms of the mortgage by failing to apply Plaintiff's payments in accordance with the terms of the mortgage. If so, as the Sixth Circuit has stated, this "is simply a legal conclusion couched as a factual allegation." *Alshaibani v. Litton Loan Servicing, LP,* No. 12-4071, United States Court of Appeals for the Sixth Circuit, decided June 5, 2013 (unpublished).

To the extent that he attempts to assert a claim for breach of contract, Plaintiff cannot do

so, because he is neither a party to the the Home Affordable Mortgage Agreement,[4] nor does he claim to be in privity of contract with Defendant. *See Owner-Operator Independent Drivers Assn., Inc. v. Concord EFS, Inc*., 59 S.W. 3d 63, 68 (Tenn. 2001) ("[A] claim for breach of contract to third-party beneficiaries must satisfy both prongs of a two-part test, namely (1) there must be a valid contract between the principal parties, and (2) the clear intent of the contract must be to benefit a third party").

Defendant, on the other hand, has shown that the HAMP Agreement was breached by Ms. Akers. Plaintiff focuses on the fact that payments under the HAMP Agreement were current as of January 23, 2012, which was three days after the servicing of the Mortgage Loan was transferred to SLS. At that time, the HAMP Agreement had been in effect for approximately nine months. But the Exhibits attached to the Petition establish that, on January 26, 2012, SLS sent Ms. Akers a monthly mortgage statement showing the total amount due on February 1, 2012, was $1,802.68. Docket No. 1-6. That amount included the current payment plus past-due payments. *Id.* On February 9, 2012, Defendant sent Ms. Akers a notice of the right to foreclose. Thereafter, Ms. Akers made an untimely payment of $1,802.58 on February 9, 2012. Docket No. 1-7. Ms. Akers made only four payments to SLS after February 2012, all of which were untimely. She made the March 2012 payment on March 7. Docket No. 1-28. On June 14, 2012, she made a payment for April, May, and June. Docket No. 1-25. On July 23, 2012, she made the payment for July. Docket No. 1-28.

The HAMP Agreement clearly provides that Ms. Akers "will be in default" if she failed

---

[4] In order to recover on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a contract; (2) nonperformance amounting to breach of that contract; and (3) damages caused by the breach of that contract. *Life Care Centers of America, Inc. v. Charles Town Associates Ltd. Partnership,* 79 F.3d 496, 514 (6th Cir.1996).

to comply with the terms of the Loan Documents, as modified by the HAMP Agreement, *i.e.*, if she did not make timely monthly payments. Thus, the undisputed facts show that Ms. Akers herself breached the HAMP Agreement and, therefore, Defendant had the right to foreclose on the property. Neither Ms. Akers nor Plaintiff have shown that Defendant breached the contract.

Finally, in his Response to the instant Motion, Plaintiff claims to have standing "pursuant to Tennessee Code Annotated § 36-4-121," because he "is the rightful owner of one-half of all equity retained in the property which SLS is attempting to place at dire risk in this overall matter." T.C.A. § 36-4-121, however, is headed "Distribution of marital property." It is in the section of the Tennessee Code pertaining to "Divorce and Annulment." The statute is approximately three pages in length, and Plaintiff has not pointed to any specific portion of the statute that supports his claim.

## II.  Conclusion

For the reasons discussed above, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss and Motion to Renew Motion to Dismiss be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                _____
                                                E. CLIFTON KNOWLES
                                                United States Magistrate Judge